IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

JAMES M. DREILING                         )
and DIANE R. DREILING,                     )
                                           )
               Plaintiffs,                 )      TC-MD 160028C
                                           )
       v.                                  )
                                           )
DEPARTMENT OF REVENUE,                      )
State of Oregon,                           )
                                           )
               Defendant.                  )      **FINAL DECISION**

       Magistrate Dan Robinson wrote and signed the Decision in this matter, entered

August 30, 2016.  This Final Decision incorporates that Decision without change.  The court did

not receive a statement of costs and disbursements within 14 days after its Decision was entered.

*See* Tax Court Rule-Magistrate Division (TCR-MD) 16 C(1).

       Plaintiffs appeal Defendant's Conference Decision and Notice of Deficiency Assessment

dated November 3, 2015, for the 2011 tax year.  A trial was held in the courtroom of the Oregon

Tax Court on June 21, 2016, in Salem, Oregon.  James R. Dreiling (Dreiling) appeared and

testified on behalf of Plaintiffs.  Debra Colton (Colton) appeared and testified on behalf of

Defendant.  Plaintiffs' Exhibits 1 through 6 were received without objection.  Defendant's

Exhibits A through K were received without objection.

## I.  STATEMENT OF FACTS

       Dreiling was unemployed during the 2011 tax year from January 1 through April 1.

(Ptfs' Ex 5 at 1.)  From April 4, 2011, through the end of the year, Dreiling worked as an outside

sales person with four companies: Bleu Bite Catering (Bleu Bite), West One Automotive (West

One), Orkin, and Timber Home Improvements (Timber).  (*Id.* at 1–2)  Beginning June 6, 2011,

Dreiling also started a pest control business, High Dessert Pest Solutions (High Dessert), although he testified that the business did not have any customers during 2011. (*See* Ptfs' Ex 6 at 14.) On their 2011 income tax return, Plaintiffs claimed deductions, as unreimbursed employee business expenses, for travel between Dreiling's home and locations related to his job search; for travel related to his work as a sales person; for his cell phone, internet, licensing fees, and other expenses related to his sales positions as well as High Dessert; and for various other supplies and expenses related to High Dessert. (*See* Ptfs' Ex 5 at 18.)

A.    *Mileage*

Plaintiffs claimed a total deduction of $17,368 for 32,617 unreimbursed employee business miles driven by Dreiling during 2011. (Ptfs' Ex 2 at 6.) Dreiling testified that he lives in rural Klamath County, Oregon, about 45 miles south of Bend, Oregon, although his mailing address is in La Pine in Deschutes County. (Ptfs' Ex 1 at 10.) Dreiling testified that, according to the federal Office of Management and Budget (OMB), his home is in the Klamath Falls micropolitan area. (*See* Ptfs' Ex 3 at 2-3.) Dreiling explained that a micropolitan area is a statistical area with a population of between 15,000 and 50,000 people. (*See also id.*) Plaintiffs deducted the miles driven by Dreiling for travel between his home and the businesses of potential employers in Bend and Redmond, Oregon. (Ptfs' Ex 5 at 1.) Dreiling explained that Bend and Redmond are in the Bend-Prineville metropolitan area according to OMB. (*See also* Ptfs' Ex 3 at 1,3.) Plaintiffs also claimed a deduction for the miles Dreiling drove while making sales calls for his jobs as an outside sales person. (Ptfs' Ex 5 at 1-2.)

Dreiling kept a mileage log for 2011, which consisted of a calendar with information marked on each business day. (Ptfs' Ex 5 at 3-14.) Dreiling recorded the total number of miles driven each day. (*Id.*) Dreiling categorized trips as either job search ("JS") or sales calls ("SC").

(*Id.* at 1.) Dreiling noted the city or cities he visited that day, abbreviated by the first letter of the city. (*Id.*) Thus, for example, on January 27, 2011, Dreiling's log reads, "JS 121 B/R," signifying that he traveled 121 miles to Bend and Redmond for a job search. (*Id.*)

1. *Job search*

Dreiling testified that while he was unemployed he received unemployment benefits, and as a condition of receiving those benefits he was required to look for work and provide a record of employers he had contacted. Dreiling testified that his approach to searching for work resembled his approach to outside sales—he preferred to hand out resumes and meet with business owners in person. Dreiling estimated that he contacted up to twenty potential employers each day, but he testified that he only listed one employer for each day in his job search record because that was all that the state required of him. (*See* Ptfs' Ex 5 at 16.) Dreiling's log shows total "JS" miles of 7,911. (Ptfs' Ex 5 at 3-14.)

Colton questioned the accuracy of Dreiling's mileage log with respect to his job search. Colton testified that the mileage Dreiling recorded in his log did not match the distances between Dreiling's home and the businesses he visited. For example, Dreiling's job search record shows that on January 3, 2011, he visited "Mountain View Heating," in Bend; his mileage log shows that he traveled 112 miles that day. However, according to Colton, a computer search showed the round-trip distance between Dreiling's home and Mountain View Heating as 82.4 miles. Colton testified that such discrepancies left her unable to determine how many miles, if any, Dreiling traveled on a given day searching for employment.

2. *Sales calls*

Dreiling worked for Bleu Bite during the first week of April; he worked for West One for the second week of April; he worked for Orkin from mid-April to mid-May; and he worked for

Timber from mid-May through the end of 2011. (Ptfs' Ex 5 at 1–2.) Dreiling testified that all of his positions were "outside sales" positions; his job consisted of making sales calls to customers' homes and businesses. Dreiling testified that during a typical day working for Timber, he would drive to a neighborhood, look for homes that might be in need of home improvements, and then knock on the door to offer Timber's services. Dreiling testified that he would visit several neighborhoods in a day. He testified that in addition to Bend and Redmond, where he primarily worked, he also traveled to Sisters, Oregon, Madras, Oregon, and Prineville, Oregon.

B.      *Other Deductions*

Plaintiffs' claimed various other deductions as Dreiling's unreimbursed employee business expenses; although Dreiling testified at trial that most of those expenses were at least partly related to High Desert. Plaintiffs deducted various expenses including a cell phone plan, internet service, his DMV driving record, pest control licensing and testing fees, business registration fees, pesticides and pesticide-related equipment (a respirator and a water jug), pest control publications, business insurance, and office supplies.

1.      *Internet*

Plaintiffs deducted $967.18 for home internet service. (Ptfs' Exs 5 at 18; 6 at 4.) Dreiling testified that he used his home internet service as both an employee of Timber and for High Desert, his start-up pest control business. He testified that he used the internet to record sales information for Timber and track his sales commission. He also testified that he used the internet to try to "get business" for High Desert, including maintaining his website and advertising. Dreiling testified that he used the internet when searching for work, and, he acknowledged, he used the internet for personal reasons as well.

/ / /

2. *Cell phone*

Plaintiffs deducted $1,042.08 for a cell phone plan. (Ptfs' Ex 5 at 18.) Dreiling testified that he used his cell phone for "100 percent business use throughout the year." An account summary included in Plaintiffs' Exhibits shows monthly expenses of $86.84. (Ptfs' Ex 6 at 3.) Dreiling testified that he first acquired his cell phone plan in 2003. Dreiling acknowledged on cross examination that his wife's cell phone was included in that plan. Dreiling testified that his employers required him to have a cell phone because it is "assumed" that most employees will have a cell phone. Plaintiffs provided a letter from Timber's Manager Glenn Boss stating that Dreiling was "responsible for using his own phone during working hours" and "[he] was not compensated" for its use. (Ptfs' Ex 2 at 11.) Dreiling testified that he used his cell phone to communicate with his employers, especially when making sales calls for Timber. Dreiling also testified that his cell phone was used as High Desert's business line.

3. *Pesticide testing and licensing fees, etc.*

Plaintiffs deducted expenses that Dreiling characterized as relating to both Orkin and High Desert. Dreiling testified that he was required to have a pesticide license while employed with Orkin and for High Desert. He explained that the Oregon Department of Agriculture (ODA) required applicants to take three tests before obtaining a pesticide license. Plaintiffs claimed deductions for three pesticide testing fees ($25 each) and two pesticide licensing fees ($60 each) (Ptfs' Ex 5 at 18.) Dreiling testified that the first licensing fees related to his employment with Orkin, and he incurred the other when he transferred his license to High Desert. Plaintiffs submitted receipts for each of the three $25 testing fees. (Ptfs' Ex 6 at 7, 8.) Plaintiffs submitted a receipt for $60.00 from the ODA for a license fee and a Commercial Pesticide Applicator application form for Dreiling, both dated May 25, 2011; the application lists

Orkin as Dreiling's employer. (*Id.* at 5, 15.) There was no receipt provided for the second license fee.

Plaintiffs deducted expenses for two "Pest Control Publications" for $25 and $22.50 and provided receipts for those payments. (Ptfs' Exs 5 at 18; 6 at 10-11.) Dreiling testified that he was required to obtain his driving record, at a cost of $3, for his position at Orkin. (*See* Ptfs' Ex 6 at 11.) Finally, Dreiling testified that his claimed deduction of $12.99 for a replacement gas cap for his vehicle was a mistake.

### 4. *High Desert business expenses*

Plaintiffs claimed deductions relating solely to High Desert, consisting of stamps and office supplies, pesticides, a respirator, advertising expenses, a business registration fee, and liability insurance. (Ptfs' Ex 5 at 18.) Plaintiffs submitted receipts for each of his claimed expenses. (*See generally* Ptfs' Ex 6.) With respect to High Desert's liability insurance, Plaintiffs provided a statement showing that Dreiling purchased a $500 per-year policy, with payments due of $46 per month. (Ptfs' Ex 6 at 16.) The statement and accompanying receipt show that Dreiling made a $100 down payment. (*Id.* at 12, 16.) Plaintiffs total claimed deduction for High Desert's insurance in 2011 was $522. (Ptfs' Ex 5 at 18.)

Dreiling testified that he began High Desert on June 6, 2011, shortly after he left Orkin. He testified that High Desert was unable to attract any paying customers during 2011, although he tried to attract business, and he had a few inquiries. Dreiling testified that he did not provide any services to customers for his pest control business, High Desert, until 2012.

### 5. *Defendant's Position*

Colton testified that although Plaintiffs submitted letters from two of Dreiling's employers (Bleu Bite and Timber) neither employer stated whether any form of reimbursement

was available to Dreiling, so those expenses were denied. Similarly, Colton testified that Plaintiffs did not provide a reimbursement policy from Orkin, so those expenses were denied. Colton testified that Plaintiffs' other expenses were from Dreiling's personal start-up business (High Desert) and were therefore denied. However, the conference officer allowed Plaintiffs $304 in business deductions, which she moved from form 2106-EZ to a Schedule C. (Def's Ex B at 3.) It is unclear which of Plaintiffs' claimed deductions were included in that $304.

## II. ANALYSIS

Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 LEd2d 226 (1992). A taxpayer is required to maintain records sufficient to establish the amount of any deduction claimed. IRC § 6001; Treas Reg § 1.6001−1(a). As the party seeking affirmative relief, Plaintiffs have the burden of proof; "a preponderance of the evidence shall suffice to sustain" that burden. ORS 305.427.[1] "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

The Oregon Legislature has expressed its intent to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code [IRC] relating to the measurement of taxable income of individuals[.]" ORS 316.007. On the issues presented in this case, Oregon law makes no adjustments to the rules under the IRC; therefore, federal law governs the court's analysis. *Austin v. Dept. of Rev.*, 20 OTR 20, 22 (2009)

/ / /

/ / /

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2009.

A.    *Mileage*

The first issue the court will address is whether Plaintiffs properly deducted Dreiling's mileage for (1) sales calls, while he was employed, and (2) his job search, while he was unemployed. IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" By contrast, IRC section 262 disallows deductions for "personal, living, or family expenses." As a general rule, "[t]he taxpayer's costs of commuting to his place of business or employment are personal expenses and do not qualify as deductible expenses." Treas Reg § 1.262-1(b)(5). That is because commuting expenses arise from the taxpayer's personal decision about where to live. *Bogue v. Comm'r*, 102 TCM (CCH) 41 (2011), 2011 WL 2709818 at *5 (US Tax Ct). "The distance a taxpayer chooses to live from his place of business does not change the character of the expense." *Harding v. Dept. of Rev.*, 13 OTR 454, 458 (1996). While commuting expenses (*i.e.*, travel between the home and place of business) are not deductible, expenses for travel between one business location and another generally are. *See* Rev Rul 99-7, 1991-1 CB 361.

Generally, if a taxpayer establishes that deductible expenses were paid in a given year but is unable to substantiate the precise amount of those expenses, the court may estimate the amount of deduction allowed. *Bogue v. Comm'r*, 2011 WL 2709818 at *4 (citing *Cohan v. Comm'r*, 39 F2d 540, 543–544 (2d Cir 1930)). However, IRC section 274(d) imposes strict substantiation requirements on deductions for travel, meals, gifts, and listed property under IRC section 280F(d)(4)(A)(i). IRC section 274(d) thus supersedes the *Cohan* doctrine. Treas Reg § 1.274–5T(a). To deduct travel expenses, the taxpayer must demonstrate the expenditure amount, time, place, and business purpose of the travel through "adequate records * * * sufficient to establish

/ / /

FINAL DECISION  TC-MD 160028C                                                                      8

each element of an expenditure * * *." Treas Reg § 1.274–5T(b), (c)(2). It the taxpayer fails to meet those substantiation requirements, no deduction can be allowed.

1.    *Sales calls*

Revenue Ruling 99-7, 1991-1 CB 361, describes some limited exceptions to the general rule that commuting expenses are not deductible. Dreiling argued at trial that his transportation expenses fell within the circumstances described by paragraph (1) of Revenue Ruling 99-7:

> "(1) A taxpayer may deduct daily transportation expenses incurred in going between the taxpayer's residence and a temporary work location outside the metropolitan area where the taxpayer lives and normally works. However, * * * daily transportation expenses incurred in going between the taxpayer's residence and a temporary work location within that metropolitan area are nondeductible commuting expenses."

Thus, in order to allow Plaintiffs' mileage deductions the court must find that Dreiling traveled to (1) "temporary work locations," that were (2) "outside the metropolitan area where [Dreiling] lives *and* normally works." *Id.* (emphasis added). A work location is considered temporary if it is "realistically expected to last (and does in fact last) for 1 year or less[.]" *Id.* If the taxpayer does not live and normally work in the same metropolitan area, then no deduction under paragraph (1) of Revenue Ruling 99-7 is allowed. *See also Porter v. Dept. of Rev.*, 20 OTR 30, 34 (2009) (upholding disallowance "[b]ecause taxpayer did not live and normally work in the same metropolitan area[.]").

During the period he was employed as an outside sales person, Dreiling traveled to the homes (and businesses) of potential customers to offer his companies' services. Dreiling would often visit several neighborhoods in one day. The court finds that Dreiling's sales calls qualify as "temporary" work locations under Revenue Ruling 99-7 because none of the individual sales locations were expected to last more than a year. In addition, the court finds that Dreiling "normally" worked in the Bend metropolitan area. Dreiling's mileage log shows that for each

day he worked or looked for work in 2011, he traveled to Bend for at least some portion of the day. On many days, Bend was the only city Dreiling traveled to.

Identifying the metropolitan area of Dreiling's residence poses a more difficult question. Dreiling relied on OMB statistical areas to determine that his residence was in the Klamath Falls micropolitan area and his work locations were located outside of that area. The U.S. Tax Court has cast doubt on the use of OMB statistical areas for determining metropolitan areas under Revenue Ruling 99-7. *See Bogue,* WL 2709818 at *10-*11 (declining to adopt "any such rigid definition," noting that use of OMB definitions would "inevitably lead to some absurd results[,]" and instead looking to the "facts and circumstances" to determine whether a worksite is "unusually distant from the area where [the taxpayer] lives and normally works."); *see also Marcum v. Dept. of Rev.*, TC-MD 150414N, 2016 WL 1688425 at *4 (Apr 25, 2016) (citing *Bogue* with approval). This court has previously found it "appropriate to interpret 'metropolitan area' as used in Revenue Ruling 99–7 with reference to the ordinary common meaning of the term[:] * * * 'of, relating to, or constituting a region including a city and the densely populated surrounding areas that are socially and economically integrated with it[.]' " *Austin v. Dept. of Rev.*, TC-MD 060634C, 2007 WL 4224969 at *3 (Nov 21, 2007).

Dreiling's home is in rural Klamath County, approximately 45 miles from Bend. Dreiling testified that he primarily worked in Bend, not just during the tax year at issue, but since 2004. Dreiling testified that he chose to rent a mailbox in La Pine, in part, because it was north of his home and presumably on the way to Bend. While more evidence regarding the social and economic ties between Bend and the area where Dreiling lives would have been helpful, the court finds that, under the facts and circumstance presented in this case, Dreiling lived and normally worked in the Bend metropolitan area. That being the case, Plaintiffs' are entitled to

deduct Dreiling's transportation expenses to and from his residence to temporary work locations outside of the Bend metropolitan area.

Dreiling made sales calls in four cities in addition to Bend: Redmond, Prineville, Sisters and Madras. The court declines to determine whether any of those cities are outside of the Bend metropolitan area because it is impossible to tell from Dreiling's mileage log if Dreiling traveled directly between his home and any of those cities. Dreiling's log only documents that he traveled to a particular city or cities; it does not provide the order of the stops or the route Dreiling took. For example, Dreiling's log shows that on July 11 he traveled to Bend, Redmond, and Madras, totaling 147 miles. (Ptfs' Ex 5 at 9.) Assuming for the sake of argument that Madras is outside of the Bend Metropolitan area, there is no way for the court to determine if Drieling ever traveled directly between his residence and Madras or, if so, the length of that trip. Thus, even if the court were to find that Dreiling traveled between his residence and temporary work locations outside of the area where he normally works, Dreiling's log is insufficient to substantiate that travel under IRC section 274(d).

Defendant noted in its conference decision that travel between business locations can be deductible if properly substantiated. (*See* Def's Ex B at 2.) Dreiling's log and testimony show that Dreiling typically traveled to multiple work locations in the same day. Travel between business locations is deductible under IRC section 162(a). However, Dreiling only recorded the total amount of miles he drove each day; he did not separate the nondeductible commuting miles from the deductible business-to-business miles. Unfortunately, that approach fails to meet the strict substantiation requirements of IRC section 274(d). Accordingly, the court upholds Defendant's denial of the mileage deductions for Dreiling's sales calls.

/ / /

2.      *Job search*

Plaintiffs deducted mileage for travel related to Dreiling's job search in 2011. Under

certain circumstances, travel expenses related to a search for employment are deductible:

> "[E]xpenses incurred in seeking new employment in the same trade or business
> are deductible under [IRC section 162] if directly connected with such trade or
> business as determined by all the objective facts and circumstances.
>
> However, such expenses are not deductible if an individual is seeking
> employment in a new trade or business even if employment is secured. If the
> individual is presently unemployed, his trade or business would consist of the
> services previously performed for his past employer if no substantial lack of
> continuity occurred between the time of the past employment and the seeking of
> the new employment."

Rev Rul 75-120, CB 55. Job-search-related travel expenses, like other travel expenses, are

subject to the strict substantiation requirements of IRC section 274(d). *See Ferrington v. Dept.*

*of Rev.*, TC-MD 130349D, 2014 WL 1670032 at *4 (Apr 28, 2014).

The first issue is whether Dreiling searched for work in "the same trade or business" or

sought employment in a "new trade or business." More evidence on this point would have been

helpful. For instance, although Dreiling stated he had been unemployed and collecting

unemployment for some time before 2011, Dreiling never specifically identified the trade or

business of his previous employer.[2] In addition, Dreiling's job search record appears to list firms

from a variety of trades or industries. (*See* Ptfs' Ex 5 at 16.) Nevertheless, Dreiling did provide

evidence from which the court could infer that Dreiling's jobs search did not represent a foray

into a new trade or business. Dreiling worked in sales in 2011, and he referenced his experience

in sales throughout trial. Dreiling's job search record includes three of the four companies he

worked at as a sales person for in 2011. It therefore appears to the court that Dreiling was an

---

[2] At trial, Defendant challenged only the sufficiency of Plaintiffs' mileage log and did not allege that Dreiling was seeking employment in a "new trade of business". (*See also* Def's Ex B at 3)(denying Plaintiffs' job search travel expenses based on discrepancies in the mileage log).

experienced sales person who was looking for work as a sales person in 2011. The court finds that Dreiling was searching for work in the same as trade or business as his previous employment.

The second issue is whether Plaintiffs adequately substantiated his job-search-related travel. Dreiling's log identifies the date, distance traveled, and location, although he only identified which city he traveled to, rather than a location or locations within that city. At trial, Colton questioned the accuracy of Dreiling's log, noting that in some instances, the number of miles Dreiling recorded did not correspond with the distance between Dreiling's residence and the addresses of the potential employers listed on Dreiling's job search record. Dreiling explained that discrepancy at trial: He testified that he only recorded one potential employer per day because that was all that was required by the state unemployment office. Dreiling estimated that instead of calling on one job prospect per day, he met with up to twenty potential employers each day, using the same strategies and techniques he used as an outside sale person. The court found Dreiling's testimony and explanation of the discrepancy to be credible. The court finds that Dreiling's mileage log adequately substantiates his business miles related to his job search.

B.      *Other Expenses*

1.      *Internet*

Home internet service is a deductible expense under IRC section 162 if the service is used as an ordinary and necessary expense in the taxpayer's business; however, nonbusiness use of that internet service is a nondeductible personal expense. *Noz v. Comm'r*, 104 TCM (CCH) 350, WL 4344158 at *8 (2012). Because "home internet expenses are not subject to the strict substantiation rules of [IRC] section 274(d)" the court may make a reasonable estimate of the allowable deduction if the taxpayer cannot establish the precise amount. *Id.* at *8-9. However,

any such estimate will "bear[] heavily against the taxpayer who failed to more precisely substantiate the deduction." *Id.* The court will not estimate the amount of a deduction unless there is a sufficient evidentiary basis to support it. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985).

Plaintiffs deducted 100 percent of their home internet expenses for 2011, according to the information they provided. Dreiling testified that he used the internet to search for work, to record and track sales information for Timber, and for advertising and a website for High Desert. Yet Dreiling also testified that Plaintiffs home internet was also used for personal reasons. Other than some brief testimony on this point, Plaintiffs provided very little evidence of the amount of business use of their home internet. The court therefore finds that the record lacks sufficient evidence to allow the court to make a reasonable estimate of Plaintiffs' deductible home internet expenses. Plaintiffs' deduction for home internet expenses is disallowed.

2.      *Cell phone*

Like the internet expenses discussed above, cell phone expenses are not subject to the strict substantiation requirements of IRC section 274(d).[3] Thus, an apportioned amount of cell phone expenses can be deducted even if the taxpayer uses the cell phone for both business and personal use.

Plaintiffs deducted 100 percent of their expenses for a two-cell-phone plan in 2011, even though any alleged business use only related to the phone used by Dreiling. When challenged on this point at trial, Dreiling maintained that *his* cellphone was nevertheless used solely for business purposes. Dreiling's credibility is hurt on this issue because he originally testified that all of Plaintiffs' cell phone expenses for 2011 were deductible business expenses. That was clearly not the case. Moreover, Dreiling testified that Plaintiffs had had that cell phone plan

---

[3] Dreiling correctly noted at trial that cell phones were removed from the strict substantiation requirements of IRC section 274(d) by the Small Business Jobs Act of 2010. Pub L 111-240, § 2043, 124 Stat 2504, 2560 (2010).

since 2003 and he had used his cell phone for personal use in the past. The court finds that Dreiling did use his cell phone for business in 2011, at least to some degree. However, there is insufficient evidence for the court to make a reasonable estimate of the relative amount of business use versus personal use. The denial of Plaintiffs' cell phone expense deduction is upheld.

> 3. *Pesticide testing and licensing fees, etc.*

"A taxpayer may deduct licensing expenses that are ordinary, necessary, and adequately substantiated." *Chapman v. Dept. of Rev.*, TC-MD 150018N, 2015 WL 5703168 at *9 (Sept 29, 2015) (citing IRC § 162.) Plaintiff deducted licensing fees and other expenses he incurred to become a Certified Pesticide Applicator; he characterized those expenses as relating to both Orkin and High Desert. The receipts Dreiling submitted for the three pesticide testing fee deductions were dated before he started High Desert and roughly correspond with the time he was employed at Orkin, although one is dated after Dreiling left Orkin in mid-May.[4] (*See* Ptfs' Exs 6 at 5, 7, 8, 15; 1 at 21.) The court therefore concludes that the evidence supports a finding that most of those expenses (ODA testing fees, ODA license fee, pest control publications, DMV record) were incurred as a result of Dreiling's employment with Orkin. According to Dreiling's testimony, at least one $60 licensing fee was related to Dreiling's own pesticide business, High Desert.

An employee may deduct expenses that are ordinary and necessary to his employer's business, but only if reimbursement is unavailable. *See Kirwan v. Dept. of Revenue*, 21 OTR 424, 432–33 (2014). If a taxpayer could have but fails to seek reimbursement, the expense is not

---

[4] One of the three testing fees is dated May 23, 2011. (Ptfs' Ex 6 at 7.) The application and receipt for Dreiling's pesticide license were dated May 25, 2011. (Ptfs' Ex 6 at 5, 15.) Those expenses were after "mid-May," when Plaintiffs' other evidence indicates he left Orkin. (Ptfs' Ex 1 at 21.) Because the applications list Orkin as Dreiling's employer, and Plaintiffs did not provide evidence of a testing fee paid in connection with High Desert, the court finds that the May 23, 2011 and May 25, 2016 testing and licensing fees related to Orkin.

deductible. *Stolk v. Comm'r*, 40 TC 345, 356 (1963), *aff'd*, 326 F2d 760 (2nd Cir 1964). Other than Dreiling's testimony, Plaintiffs did not provide any additional evidence to show that Orkin did not and would not have reimbursed Dreiling for expenses related to his employment there.[5] Plaintiffs have therefore failed to carry their burden of proof on this issue. *Cf Kudina v. Dept. of Rev.*, TC-MD 080038C, WL 4021160 at *8 (Nov 17, 2009) ("Although [taxpayer] has information tending to substantiate the acquisition of the items, there is no persuasive corroborative evidence that [the taxpayer] herself paid for the items and was not reimbursed.") The expenses related to Dreiling's employment with Orkin are disallowed.

Dreiling also deducted $60 for an "ODA fee" which he explained at trial was the cost to transfer his pesticide license to High Desert. Plaintiffs did not provide any documents to substantiate that expense; it is therefore disallowed.

4.      *High Desert Business Expenses*

Ordinary and necessary business expenses connected with a taxpayer's trade or business are deductible. IRC § 162. Deductible expenses include supplies and "insurance premiums * * *." Treas Reg 1.162-1. Dreiling started High Desert in 2011, and deducted the following categories of expenses: office supplies, equipment, pesticides, insurance premium payments, and business registration fees. Plaintiffs characterized those expenses as unreimbursed employee expenses on their 2011 tax return. Dreiling acknowledged at trial that that was a mistake; the expenses related to his business, High Desert, not the business of his employer. Dreiling also testified at trial that High Desert did not have any customers in 2011; he characterized his expenses as "start-up" costs.

---

[5] Dreiling argued that box 12 of his W-2 did not show any reimbursements from Orkin. Payments made under an accountable plan that exceed the allowable per diem or mileage rate are reported in box 12. 2011 Instructions for Forms W-2 and W-3, Internal Revenue Service, *available at* https://www.irs.gov/pub/irs-prior/iw2w3--2011.pdf. Box 12 does not apply to the expenses at issue here, and in any event, the fact that no reimbursements were reported sheds no light on whether reimbursements were available.

In order for expenses to be "ordinary and necessary" expenses in a trade or business, the trade or business must be up and running at the time the expenses are incurred. *Heinbockel v. Comm'r*, 105 TCM (CCH) 1733, 2013 WL 1953732 at *16 (2013). "A business may exist even if there are no profits in the initial years, provided that there is 'profit potential.'" *Shammel v. Dept. of Rev.*, TC-MD 120838D, WL 3964348 at *3 (July 31, 2013)(citing *Sabelis v. Comm'r,* 37 TC 1058, 1062 (1962). Expenses incurred before the trade or business begins are generally amortized over a 180-month period. *See* Treas Reg 1.195-1. However, businesses with less than $50,000 of start-up costs can deduct up to $10,000 of start-up expenses incurred in the year the business begins to operate. IRC § 195(b)(1),(b)(3).

The court makes two observations: First, the conference decision from which Plaintiffs appeal found that Plaintiffs incurred $304 of deductible business expenses in 2011. The conference officer wrote, "I have moved $304 from form 2106-EZ to Schedule C." (Def's Ex B at 3.) The conference officer did not elaborate further or explain which expenses she found to be deductible. Nevertheless, implied in the officer's finding is that Dreiling's business, High Desert, was operating during 2011 and thus incurred deductible business expenses.[6] Colton did not provide any evidence that would contradict that finding; she took the position at trial that the expenses were not deductible as unreimbursed employee expenses because they were not, in fact, employee expenses. The court therefore sees no reason to disturb the conference officer's finding that High Desert was operating as business at some time during 2011.

Second, the court observes that Plaintiffs' total business expenses related to High Desert fall well below the $10,000 limit provided by IRC section 195. Thus, it is unnecessary to determine which expenses are truly start-up costs and which expenses were incurred after the

---

[6] The Schedule C form is used to report profits and losses from a business.

business began to operate. The expenses are deductible so long as they are ordinary, necessary, and properly substantiated.

Plaintiffs provided receipts for expenses characterized as "Office Supplies, Business", "Advertisement for Business", and "Stamps" totaling $170.98. (*See generally* Ptfs' Exs 5 at 18; 6.) The court is persuaded that those items, more likely than not, were ordinary and necessary expenses incurred by High Desert. Plaintiffs are allowed a deduction for those expenses. Plaintiffs provided receipts for "Pesticides" ($89.51), "Pest Control Equipment" ($29.14), and Oregon business registration fees ($50). (*See id.*) Again, the court is persuaded that such items were ordinary and necessary expenses incurred by High Desert. Plaintiffs are allowed a deduction for those expenses in the amount of $339.63.

Plaintiffs provided a receipt and a statement showing that Dreiling purchased liability insurance for High Desert in 2011. (Ptfs' Ex 6 at 12, 16.) The court finds that the liability insurance premium was an ordinary and necessary expense. Plaintiffs deducted a total of $522 for insurance in 2011. That is confusing because the statement and receipt shows a premium of $500 for a one-year policy with a down payment of $100 and monthly payments of $46 beginning in July 2011. That suggests that Dreiling made six payments of $46 in 2011 plus the $100 down payment for a total of $376. Plaintiffs' are allowed a deduction in that amount.

### III. CONCLUSION

After careful consideration of the evidence and applicable law, the court concludes that Plaintiffs' appeal should be granted in part. Plaintiffs' are allowed a mileage deduction based on 7,911 miles driven by Dreiling for his job search. Plainitffs' remaining mileage deduction is disallowed. Plaintiffs' cell phone and home internet deductions are disallowed. The deductions related to Dreiling's employment with Orkin are disallowed. Plaintiffs are allowed the following

Schedule C deductions for High Desert: office supplies, $170.98; pesticides, $89.51; pest control equipment, $29.14; business registration fee, $50; insurance premium, $376. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs are allowed a mileage deduction based on 7,911 miles driven in 2011 for Dreiling's job search.

IT IS FURTHER DECIDED that Plaintiffs' are allowed the following Schedule C deductions for High Desert: office supplies, $170.98; pesticides, $89.51; pest control equipment, $29.14; business registration fee, $50; insurance premium, $376.

IT IS FURTHER DECIDED that, except for the above expenses, Plaintiffs have failed to prove that they are entitled to deduct the other expenses claimed on their 2011 return.

Dated this ____ day of September 2016.

POUL F. LUNDGREN
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by* *mailing* *to: 1163 State Street, Salem, OR 97301-2563; or by* *hand delivery* *to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within* *60* *days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on September 19, 2016.*